## UNITED STATES DISTRICT COURT
## DISTRICT OF THE DISTRICT OF COLUMBIA

---

**United Government Security Officers of America**
 **- International Union,**
**2879 Cranberry Highway**
**East Wareham, MA 02538**

      **and**

**United Government Security Officers of America**
 **- Local 34**
**13303 Burleigh Street**
**Upper Marlboro, MD 20774**

        **Plaintiffs**

      **v.**                             **Case No.**  _____

**American Eagle Protective Service, Inc.,**
**7700 Chevy Chase Drive**
**Austin, TX 78752**

      **and**

**Paragon Systems, Inc.**
**13655 Dulles Technology Drive, Suite 100**
**Herndon, VA 20171**

      **Defendants**

---

### COMPLAINT FOR DECLARATORY JUDGMENT,
### TO COMPEL ARBITRATION,
### AND TO OBTAIN DAMAGES
### FOR BREACH OF CONTRACT

Plaintiffs United Government Security Officers of America - International Union ("International") and United Government Security Officers of America - Local 34 ("Local 34"), collectively referred to as "the Union," by their undersigned counsel, file this Complaint seeking declaratory relief and to compel arbitration of a dispute between the Union and Defendants American Eagle Protective Service, Inc. ("AEPS") and Paragon Systems, Inc., ("Paragon"), collectively

referred to as "the Employer," and to obtain damages for the Employer's unjustified refusal to proceed to arbitration.

## NATURE OF ACTION

1.      This is an action for declaratory relief pursuant to 28 U.S.C. §§2201 and 2202, for the purpose of determining a question in actual controversy between the parties occurring in Washington, D.C., hereinafter "the District," as set forth more fully below.

2.      The Union seeks a declaration that the collective bargaining agreement ("CBA") between the Union and Employer was in effect as of December 2014; that it contained an agreement to arbitrate disputes; that the Union seeks to proceed to arbitration regarding a dispute about the termination of an employee that occurred in December 2014; and therefore that the Employer is obliged by the CBA to arbitrate such dispute pursuant to the CBA.

3.      Pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §185, the Union also seeks to compel arbitration of the dispute over the discharge of an employee.

4.      Because the Employer has no justification for declining to arbitrate the subject dispute, and by its refusal to arbitrate has forced the Union to enforce its clear right to arbitrate under the CBA by this court action, damages are owed to the Union to remedy this breach of the CBA by the Employer in the form of reimbursement of the Union for all attorneys fees and costs incurred in prosecuting this Complaint.

## PARTIES

5.      Plaintiff International is a labor organization that represents employees in the governmental security services industry through the United States, all such employees falling within the definition of "guards" in Section 9(b)(3) of the National Labor Relations Act, 29 U.S.C. §159(b)(3), including employees represented by Local 34 in the District.  The International is a "labor organization" within the meaning of 29 U.S.C. §185.

6.      Plaintiff Local 34 is a labor organization affiliated with the International, and represents "guards" within the meaning Section 9(b)(3) of the National Labor Relations Act, 29 U.S.C. §159(b)(3), specifically all full-time and part-time security officers, as determined by the National Labor Relations Board by certification issued in 5-RC-14880 on September 7, 1999; employed by the Employer in the United States Department of Agriculture Headquarters Complex in the District; who have obtained, or are obtaining, a Special Police Officer Commission in the District; excluding all other employees of the Employer, including office, clerical and professional employees as defined by the National Labor Relations Act.  Local 34 is a "labor organization" within the meaning of 29 U.S.C. §185.

7.      Defendant AEPS is a Texas corporation doing business in the District of Columbia. Its principal office is located at 7700 Chevy Chase Drive, Austin, TX 78752.  AEPS is an "employer" within the meaning of 29 U.S.C. §185.

8.      Defendant Paragon, the parent of AEPS, is a Virginia corporation, and is doing business in the District of Columbia.  Its principal office is located at 13655 Dulles Technology Drive, Suite 100, Herndon, VA 20171.  Paragon  is an "employer" within the meaning of 29 U.S.C. §185.

3

## JURISDICTION AND VENUE

9.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331 and Section

301 of the LMRA, 29 U.S.C. §185.  This Court is authorized to enter declaratory relief pursuant to

28 U.S.C. § 2201.

10.      Venue is proper pursuant to 28 U.S.C. §139(b) and 29 U.S.C. §185(a) because the

events giving rise to this action are substantially connected to the District.

## FACTS

11.      The Employer and the Union entered into a CBA setting forth terms and conditions

of employment for the bargaining unit represented by Local 34, with a duration of October 16, 2014

through October 27, 2017 ("2014-17 CBA"), a true and accurate copy of which is attached hereto

as Complaint Exhibit 1.

12.      The 2014-2017 CBA provides for the resolution of "grievances" at Article 5, entitled

"Grievance Procedure," with a final step of binding arbitration.  Though the CBA speaks for itself,

the following are true and accurate quotations of portions of Article 5 relating to grievance and the

agreement to arbitrate grievances [Complaint Exhibit 1 at 11–13]:

> Section 5.1 Intent
> For purposes of this Agreement, a grievance shall mean a claimed violation,
> misinterpretation or misapplication of any provision of this Agreement or the
> challenge of any disciplinary action taken against a Union Employee ....  The parties
> agree that the grievance procedure shall be the exclusive process for the resolution
> of all grievances. . . .
>          . . . .
> Section 5.3 Grievance Procedure
> All grievances shall be presented and processed in accordance with the following
> procedure:  [Language describing terms and conditions relating to the grievance
> procedure]

Section 5.4 Arbitration Procedure

Grievances processed in accordance with the requirements of Section 5.3 that remain unsettled may be processed to arbitration by the Union, giving the Company President or designee written notice of its desire to proceed to arbitration not later than fifteen (15) days after rejection of the grievance in Step Two.  Grievances which have been processed in accordance with the following procedures and limitations:

A. Pre-Arbitration Hearing - The parties agree to hold a pre-arbitration hearing either in person or by phone requiring a senior manager of the Company and the Union President (or designee) to make a final effort to settle the grievance before arbitration.

B. Selection of an Arbitrator - Within fifteen (15) days of receipt of the Union's written notice to proceed with arbitration, the Company and Union will meet or telephonically jointly attempt to agree upon the selection of a neutral arbitrator. If, within fifteen (15) days, the parties fail to agree upon the selection of an arbitrator, the Union will request the Federal Mediation and Conciliation Services (FMCS) to supply a list of seven (7) arbitrators. An arbitrator will be selected from the list until one (1) name remains, and this individual shall be the arbitrator to hear the grievance.

C. Decision of the Arbitrator - The arbitrator shall commence the hearing at the earliest possible date. The decision of the arbitrator shall be final and binding upon the parties to the Agreement. Any decision shall be complied with, without undue delay after the decision is rendered. It is understood and agreed between the parties that the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement. Except as provided in Article 6, Section 6.1, in disciplinary cases the arbitrator must apply the principles of the progressive disciplinary system consistent with this agreement.

D. Arbitration Expense - The arbitrator's fees and expenses, including the cost of any hearing room, shall be shared equally between the Company and the Union. Each party to the arbitration will be responsible for its own expenses and compensation incurred in bringing any of its witnesses or other participants to the arbitration. Any other expenses, included transcript costs, shall be borne by the party incurring such expenses.

E. Time Limits - The decision of the arbitrator shall be rendered as soon as possible after the dispute has been submitted to him/her and will normally be rendered within sixty (60) days of the latter of the close of the hearing or submission of post-hearing briefs (unless extended by agreement of the parties). The Employer's failure to enforce the time limits in this Article in a particular case shall not carry precedent in subsequent grievances/arbitrations. The parties may extend any of the time limits in this Article by mutual agreement, which agreement shall not carry precedent in subsequent grievances/arbitrations.

13.     The 2014-17 CBA at Article 6 entitled "Discipline" states that "no employee shall be discharged or disciplined without just cause."  Protection from unjust discipline or discharge is afforded by other provisions of the 2014-17 CBA as well.

14.     On or about December 12, 2014, the Employer issued a document memorializing the discharge from employment of a member of the bargaining unit covered by the 2014-17 CBA, a true and accurate copy of which is attached hereto as Complaint Exhibit 2 (redacted to remove the name of the employee).

15.     The Union timely filed a grievance at each step of the grievance procedure, and then timely filed a demand for arbitration pursuant to Article 5.4 of the 2014-17 CBA with the Federal Mediation and Conciliation Service ("FMCS") on January 23, 2015, docketed as FMCS Case No. 1552971, a true and accurate copy of such FMCS demand for arbitration and confirmation of date and docketing number attached hereto and incorporated herein as Complaint Exhibit 3 (redacted to remove the name of the employee).

16.     Thereafter the Union and Employer were issued a panel of arbitrators by the FMCS, from which the parties are obliged to reply as part of the process leading to the appointment of an arbitrator, a true and accurate copy of such panel listing is attached hereto and incorporated herein as Complaint Exhibit 4 (arbitrator resumes excluded and employee name redacted).

17.     Counsel for the Union, Robert Kapitan, and counsel for the Employer, Frank Davis, exchanged emails about the Union's desire to select an arbitrator from the FMCS panel listing from January 27, 2015 (four days after the filing and docketing of the FMCS demand for arbitration) through October 26, 2016.  Through the twenty-two month period from January 27, 2015 through October 27, 2016, the Employer's counsel never objected to selecting an arbitrator, while at the same

time did not engage in the process.  True and accurate copies of such emails is attached hereto and incorporated herein as Complaint Exhibits 5–6 (emails sometimes references multiple cases, all employee names of redacted, and the subject employee name is denoted with an "X" to distinguish it from the other references to employees).

18.     In addition, in or about August 2015, during the sequence of emails during the twenty-two month period from January 27, 2015 through October 26, 2016 referenced <u>supra</u> at ¶7, Union counsel, Robert Kapitan, was directed by Employer counsel, Frank Davis, to contact the Employer's in-house counsel, Jacob Stone, about selection of an arbitrator for the subject termination case.

19.     Shortly thereafter, by letter dated and sent on or about August 25, 2015, Union counsel wrote a letter to in-house counsel for the Employer Jacob Stone advising of the direction to contact Stone, and, among other things, that the Union "would like to select the arbitrator and schedule the hearing."  A true and accurate copy of such letter is attached hereto and incorporated herein as Complaint Exhibit 7.

20.     The Employer never objected to the selection of an arbitrator, nor refused to arbitrate the case in response to the emails over the twenty-two month period from January 27, 2015 through October 26, 2016 (Complaint Exhibits 5–6), or the letter dated August 25, 2015 (Complaint Exhibit 7).

21.     As Mr. Kapitan no longer works for the International, the Union lacks information sufficient to form a belief as to whether there were further contacts by Union counsel Robert Kapitan with an Employer representative about the subject termination case for the sixteen month period from October 26, 2016 to February 7, 2018.

22.     On February 7, 2018 the undersigned law firm of McDonald Lamond Canzoneri,

successor to Mr. Kapitan as counsel for the Union, by Attorney Allison Zimmon, sent an email to

Employer counsel Stone.  Ms. Zimmon announced that her firm had replaced Mr. Kapitan as counsel

and was ready to select an arbitrator.

> **From**: Allison Zimmon <azimmon@masslaborlawyers.com>
> **To:** jstone@aeps.us
> **Cc:** Rena Washer <rwasher@masslaborlawyers.com>, Jim Natale <jnatale@ugsoa.com>
> **Date:** Wed, 7 Feb 2018 17:27:55 -0500
>
> Dear Attorney Stone:
> Our firm is now counsel to UGSOA. I understand that you are the General Counsel for
> AEPS. If this is incorrect, please refer me to the correct contact person.
>
> There is a panel ready to be struck for the following case brought forward by UGSOA on
> behalf of Local 34:
>
> ██████. Termination. FMCS No. 1552971.
>
> Please contact me so that we may select an arbitrator.
>
> I look forward to hearing from you.

A true and accurate copy of the foregoing email is attached hereto and incorporated herein as

Complaint Exhibit 8 (redacting name of employee).

23.     Five days later, by letter dated February 12, 2018, Employer counsel Frank Davis

notified Union counsel that the Employer was refusing to arbitrate the dispute and therefore would

not participate in selecting an arbitrator in response to the FMCS panel notification.  In addition,

Employer counsel complained about various concerns that the Employer counsel alleged showed that

the Union failed to follow the procedure in the contract, and that the grievance therefore was not

procedurally arbitrable, and that considerations of prejudice relating to delay, was justification for

refusing to arbitrate.  A true and accurate copy of the foregoing letter is attached hereto and

incorporated herein as Complaint Exhibit 9 (redacting name of employee).  The letter states it was sent by email and certified mail return receipt requested, but in fact was never received by Union counsel via email.

24.     Though, in the letter the Employer counsel states that the Employer was "surprised and disappointed to see the union raise the matter at this late date," the Employer counsel failed to explain why he failed to participate in the selection of an arbitrator, and failed to object at any point during the twenty-two month period from January 27, 2015 (four days after the FMCS Demand for arbitration was filed) to October 26, 2016; nor did the Employer counsel explain why, knowing that the Union was interested in arbitrating the case the Employer did not protect its concerns about "prejudice" emanating from delay by initiating the process of selection itself.

25.     By email dated February 22, 2018, Union counsel corresponded with Employer counsel Davis and stated that the reasons for not arbitrating set forth in Attorney Davis's February 12, 2018 letter, as a matter of law, did not justify refusal to arbitrate because the Employer's grounds related to procedural arbitrability; asked the Employer to reconsider the issue and advise the Union by Thursday March 1 whether the Employer would participate in selection of an arbitrator pursuant to the FMCS process; and if not then the Union would be forced to enforce its right to arbitrate in federal court via an action of the nature set forth in this complaint, and with a further count to recover attorneys fees based upon the refusal to arbitrate without justification.  A true and accurate copy of the aforementioned email dated February 22, 2018 is attached hereto and incorporated herein as Complaint Exhibit 10.

26.     The Employer has long been aware, and has itself advocated, that matters of procedural arbitrability do not foreclose submission of a matter to arbitration, and therefore the

position as articulated by Employer counsel in the February 12, 2018 letter was a knowingly baseless, frivolous grounds for refusing to arbitrate.  In support of the foregoing, see attached, true and accurate copy of the AEPS's Reply brief in *Deters v. American Eagle Protective Services Corporation*, 2017 U.S. Dist. LEXIS 211600 filed on October 23, 2017, attached hereto and incorporated herein as Complaint Exhibit 11.  See in particular the Reply brief of AEPS at pages 8–9, under the heading:

> II.  WHETHER PLAINTIFFS OR THE UNION FAILED TO TIMELY SUBMIT THE CLAIMS TO THE GRIEVANCE PROCESS IS A MATTER OF PROCEDURAL ARBITRABILITY FOR THE ARBITRATOR TO DECIDE—NOT THE COURT.

[Complaint Exhibit 11 at 8].

27.     The Employer's Reply Brief in *Deters* demonstrates specific knowledge of the longstanding standard that procedural arbitrability matters do not foreclose arbitration:  "This is a question of procedural arbitrability, and "the law has been long settled that questions of procedural arbitrability are to be decided by an arbitrator." [Complaint Exhibit 11 at 8].

## COUNT I
### (Declaratory Relief)

28.     The Union incorporates averments ¶¶1–27 as if set forth in full.

29.     The 2014–17 CBA was in effect as of December 2014 and contained a valid agreement to arbitrate dispute regarding disputes between the Union and the Employer arising under the 2014–17 CBA, including but not limited to disputes about whether there was just cause for the discharge from employment of an employee on December 12, 2014.

30.     The FMCS Demand for Arbitration filed by the Union triggered the obligation for the parties to cooperate and select an arbitration from a panel listing provided by the FMCS.

10

31.     Effective February 12, 2018, the Employer for the first time notified the Union that it was refusing to arbitrate the termination from employment of the subject employee, member of the bargaining unit, whose termination was covered by the 2014-17 CBA, and that the Employer was therefore refusing to participate in selection of an arbitrator.

33.     The FMCS will not appoint an arbitrator in the absence of both sides of the dispute participating in selecting an arbitrator.

32.     Since the Employer is refusing to participate in selecting an arbitrator for the subject dispute, the FMCS will not appoint an arbitrator.

33.     By its actions, the Employer is in breach of the 2014-17 CBA's agreement to arbitrate and is effectively blocking the parties from arbitrating the dispute about the subject termination of the employee in December 2014.

34.     The Union cannot proceed to arbitrate the subject dispute about the termination of the subject employee in December 2014 without a Court order directing the Employer to either participate, or expressly advise FMCS that the Employer is waiving its right to select the arbitrator and that FMCS may proceed in the absence of the Employer's participation.

35.     An actionable and justiciable controversy exists between the parties which the Court can resolve with finality by declaring the rights of the parties.

**COUNT II**
**(Claim to Compel Arbitration)**

36.     The Union incorporates averments ¶¶1–35 as if set forth in full.

11

37.     Section 301(a) of the LMRA, 29 U.S.C. § 185(a), grants this Court jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting interstate commerce.

38.     By its breach of the agreement to arbitrate contained in the 2014–17 CBA, the Employer has denied the Union of its ability to resolve the dispute regarding the termination of the subject employee on December 12, 2014 through arbitration as set forth in the 2014-17 CBA.

39.     To rectify the Employer's improper refusal to arbitrate, the Court must issue an order for specific performance by the Employer compelling it to either participate in the selection of an arbitrator through the FMCS process, or expressly advise FMCS that the Employer is waiving its right to select the arbitrator and that FMCS may proceed in the absence of the Employer's participation, and that the arbitration hearing shall be convened with or without the Employer's participation.

## COUNT III
### (Money Damages For Breach of Agreement to Arbitrate)

40.     The Union incorporates averments ¶¶1–39 as if set forth in full.

41.     By its refusal to arbitrate, the Employer has breached the 2014-17 CBA.

42.     The Employer's breach of the 2014-17 CBA has forced the Union to enforce its right to arbitrate the parties' dispute about whether there was "just cause" to the discharge the subject employee from employment on December 12, 2014, thereby incurring needless expense of prosecuting this lawsuit to obtain declaratory relief an order to compel arbitration in the form of attorneys fees and costs that the Union would not have incurred but for the Employer's breach of the 2014-17 CBA's agreement to arbitrate.

43.     The Employer's refusal to arbitrate is without justification and baseless and therefore it has no protection for its refusal to arbitrate and damages must be imposed so that the Union is made whole for all losses suffered due to the Employer's breach of the 2014-17 CBA.

44.     The Employer's refusal to arbitrate is not only baseless based upon longstanding precedent that holds that a party may not refuse to arbitrate on grounds of procedural arbitrability, but the Employer is subjectively aware of this (a factor not necessary to prove baselessness, but one that exacerbates the wrongdoing) as demonstrated by the Reply Brief filed by AEPS on October 23, 2017 in *Deters v. American Eagle Protective Services Corporation* where the Employer expressly argued, successfully, that the other party must arbitrate its dispute, notwithstanding the procedural arbitrability concerns because, as the Employer explained, "the law has been long settled that questions of procedural arbitrability are to be decided by an arbitrator." [Complaint Exhibit 11 at 8].

WHEREFORE, the International and Local 34 respectfully requests that the Court issue:

A.     DECLARATORY RELIEF, by declaring that the dispute relating to the discharge of the subject employee on December 12, 2014, is arbitrable under the 2014-17 CBA, that the 2014-17 CBA was in effect at the time of the termination, and that the termination of an employee is within the scope of the agreement to arbitrate, that FMCS should process the case to select an arbitrator with or without participation of the Employer.

B.     AN ORDER, compelling specific performance of the Employer to either participate in the selection of an arbitrator through the FMCS process; if the Employer does not wish to participate in selection that the Employer expressly in writing advise FMCS that the Employer is waiving its right to select the arbitrator and that FMCS shall proceed to select an arbitrator in the

absence of the Employer's participation, and that Employer shall further advise the FMCS that the arbitration hearing shall be convened with or without the Employer's participation.

C.    AN ORDER, as remedy for the Employer's breach of the agreement to arbitrate in the 2014-17 CBA, the Employer shall pay the Union all attorneys fees and costs incurred in this action, following the <u>Lodestar</u> standards, with the parties to submit any dispute about amounts owing for attorneys fees and costs that they cannot resolve without court involvement to the Court within 90-days of this Order and the Court thereafter to resolve any such disputes in accordance with the <u>Lodestar</u> procedure.

Respectfully submitted,

*s/Jonathan G. Axelrod*
Jonathan G. Axelrod (D.C. Bar 210245)
Justin Keating (D.C. Bar 475602)
Beins, Axelrod, P.C.
1030 15th Street N.W., Suite. 700 East
Washington, DC 20005
Telephone: 202-328-7222
Telecopier: 202-328-7030
Email: jaxelrod@beinsaxelrod.com


*s/Jack J. Canzoneri* (*pro hac vice* to be filed)
Jack J. Canzoneri, Esq.
McDonald Lamond Canzoneri
352 Turnpike Road, Suite 210
Southborough, MA  01772-1756
Telephone: 508-485-6600
Telecopier: 508-485-4477
Email: jcanzoneri@masslaborlawyers.com

Counsel for United Government Security Officers of America - International Union ("International") and United Government Security Officers of America - Local 34